# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| PINEY WOODS RESOURCES, INC., *et al.*,[1] | Case No. 19-01390-DSC-11 |
| Debtors. | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) APPROVING THE DEBTORS' PROPOSED ADEQUATE ASSURANCE OF
PAYMENT FOR FUTURE UTILITY SERVICES, (II) PROHIBITING UTILITY
COMPANIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES,
(III) APPROVING THE DEBTORS' PROPOSED PROCEDURES FOR RESOLVING
ADDITIONAL ASSURANCE REQUESTS, AND (IV) GRANTING RELATED RELIEF**

Piney Woods Resources, Inc., and its debtor affiliate, Jesse Creek Mining, LLC, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), respectfully state the following in support of this motion (the "Motion"):

### Relief Requested

1.     The Debtors seek entry of interim and final orders, substantially in the form attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"): (a) approving the Debtors' proposed adequate assurance of payment for future utility services; (b) prohibiting utility companies from altering, refusing, or discontinuing service; (c) approving the Debtors' proposed procedures for resolving additional adequate assurance requests; and (d) granting related relief. In addition, the Debtors request that the Court schedule a final hearing within approximately 21 days of the Commencement Date to consider approval of this Motion on a final basis.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Piney Woods Resources, Inc. (0129) and Jesse Creek Mining, LLC (0533). The location of the Debtors' service address is: 1615 Kent Dairy Road, Alabaster, Alabama 35007. Debtors have filed a motion for joint administration with the Court.

4833-9859-2912

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the Northern District of Alabama (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *General Order of Reference* from the United States District Court for the Northern District of Alabama, dated January 12, 1995. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a) and 366 of the Bankruptcy Code and Bankruptcy Rule 6003.

**Background**

5.      The Debtors are engaged in the production and sale of metallurgical grade coal from a mining complex located in Shelby County, Alabama. Debtor Piney Woods Resources, Inc. is the parent company of Jesse Creek Mining, LLC. The Jesse Creek mining complex consists of a surface and highwall mining operation, a preparation plant, and an underground mine development project. Mining and development operations were idled on March 27, 2019.

6.      On the April 2, 2019 ("Commencement Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases

2

pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

**Utility Services and Proposed Adequate Assurance**

### I.     **The Utility Services and Utility Companies.**

7.     In connection with the operation of their businesses and management of their properties, the Debtors obtain electricity, telecommunications, natural gas, water, waste management (including sewer and trash), internet, and other similar services (collectively, the "Utility Services") from a number of utility companies or brokers (collectively, the "Utility Companies"). A nonexclusive list of the Utility Companies and their affiliates that provide Utility Services to the Debtors as of the Commencement Date (the "Utility Services List") is attached hereto as **Exhibit C**. The relief requested herein is requested with respect to all Utility Companies providing Utility Services to the Debtors.

8.     On average, the Debtors pay approximately $91,638.00 each month for third-party Utility Services, calculated as a historical average payment for the twelve months ending in February 28, 2019.

9.     The mining operations, however, were idled on March 27, 2019 and it is projected that the Debtors will pay approximately $30,000.00 each month for third-party Utility Services.

### II.     **Proposed Adequate Assurance of Payment.**

10.     The Debtors intend to pay postpetition obligations owed to the Utility Companies in a timely manner. Cash held by the Debtors and the proceeds of the proposed debtor-in-possession financing facility will provide sufficient liquidity to pay the Debtors' Utility Service obligations in accordance with their prepetition practice in the ordinary course of business. Certain of the Debtors' major utility providers currently hold deposits from the Debtors as of the Commencement Date as set forth on **Exhibit C**.

3

11.     To provide additional assurance of payment, the Debtors propose to deposit into a segregated account $15,000.00 (the "Adequate Assurance Deposit"), which represents an amount equal to one half the Debtors' projected monthly cost of Utility Services calculated following the idling of the mine or the monthly minimum required to maintain the Utility Service, whichever is greater. The Adequate Assurance Deposit will be held in the segregated account at a bank selected by the Debtors for the benefit of the Utility Companies (the "Adequate Assurance Account") and for the duration of these chapter 11 cases and may be applied to any postpetition defaults in payment to the Utility Companies. The Adequate Assurance Deposit will be held by the Debtors; no liens will encumber the Adequate Assurance Deposit or the Adequate Assurance Account. The Debtors submit that the Adequate Assurance Deposit and Existing Deposits, in conjunction with the Debtors' ability to pay for future Utility Services in accordance with their prepetition practices (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Companies in full satisfaction of section 366 of the Bankruptcy Code.

## III.     **The Adequate Assurance Procedures.**

12.     In light of the severe consequences to the Debtors' businesses and operations that would result from any interruption in Utility Services, but recognizing the right of the Utility Companies to evaluate the Proposed Adequate Assurance, if a Utility Company believes additional adequate assurance is required, it may request such assurance pursuant to the following procedures (the "Adequate Assurance Procedures"):

    a.      Subject to paragraphs (e)–(h) herein, the Debtors will deposit the Adequate Assurance Deposit, in the aggregate amount of $15,000.00, in the Adequate Assurance Account within ten business days of entry of the Interim Order.

    b.      Each Utility Company (other than those with Existing Deposits) shall be entitled to the funds in the Adequate Assurance Account in the amount

set forth for such Utility Company in the column labeled "Proposed Adequate Assurance" on the Utility Services List.

c.    If an amount relating to Utility Services provided postpetition by a Utility Company is unpaid, and remains unpaid beyond any applicable grace period, such Utility Company may request a disbursement from the Adequate Assurance Account by giving notice to: (i) the Debtors, 1615 Kent Dairy Road, Alabaster, AL 35007; (ii) proposed counsel to the Debtors, Jackson Kelly PLLC, 175 E. Main Street, Ste. 500, Lexington, KY 40507, Attn: Mary Elisabeth Naumann and Chacey R. Malhouitre; (iii) proposed co-counsel to the Debtors, Benton & Centeno LLP, 2019 Third Avenue North, Birmingham, Alabama 35203, Attn.: Lee R. Benton and Samuel C. Stephens; (iv) the Office of the Bankruptcy Administrator for the Northern District of Alabama, Robert S. Vance Federal Building, 1800 Fifth Avenue, Suite 300, Birmingham, Alabama 35203; (v) the official committee of unsecured creditors (if any) appointed in these chapter 11 cases and its counsel; (vi) counsel to the lenders under the Debtors' debtor-in-possession credit agreement and prepetition first-lien credit agreements, Davis Graham & Stubbs LLP, 1550 17th Street, Suite 500, Denver, CO 80202, Attn: Christopher L. Richardson, and Kyler K. Burgi, and Maynard Cooper & Gale, 1901 Sixth Avenue North Regions Harbert Plaza, Suite 2400, Birmingham, AL 35203, Jayna Partain Lamar; and (vii) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Debtors shall, in consultation with the DIP Lenders, honor such request within five business days after the date the request is received by the Debtors, subject to the ability of the Debtors, in consultation with the DIP Lenders, and any such requesting Utility Company to resolve any dispute regarding such request without further order of the Court. To the extent a Utility Company receives a disbursement from the Adequate Assurance Account, the Debtors shall replenish the Adequate Assurance Account in the amount disbursed.

d.    The portion of the Adequate Assurance Deposit attributable to each Utility Company shall be returned to the Debtors on the earlier of (i) reconciliation and payment by the Debtors of the Utility Company's final invoice in accordance with applicable nonbankruptcy law following the Debtors' termination of Utility Services from such Utility Company and (ii) the effective date of any chapter 11 plan confirmed in these chapter 11 cases.

e.    Any Utility Company desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "Additional Assurance Request") on the Notice Parties.

f.    Any Additional Assurance Request must (i) be in writing, (ii) identify the location for which the Utility Services are provided, (iii) summarize the

Debtors' payment history relevant to the affected account(s), (iv) certify the amount that is equal to two weeks of the Utility Services the Utility Company provides to the Debtors, calculated based on Debtors' projected use following the idling of the mine or any other minimum amount required, and (v) certify that the Utility Company does not already hold a deposit equal to or greater than two weeks of Utility Services.

g.   Any Additional Assurance Request may be made at any time. If a Utility Company fails to file and serve an Additional Assurance Request, the Utility Company shall be (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with section 366 of the Bankruptcy Code and (ii) forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtors on account of any unpaid prepetition charges, or requiring additional assurance of payment other than the Proposed Adequate Assurance.

h.   Upon the Debtors' receipt of any Additional Assurance Request, the Debtors shall promptly negotiate with such Utility Company to resolve such Utility Company's Additional Assurance Request to negotiate with such Utility Company to resolve such Utility Company's Additional Assurance Request.

j.   The Debtors may, in consultation with the DIP Lenders, and without further order from the Court, resolve any Additional Assurance Request by mutual agreement with a Utility Company and, the Debtors may, in connection with any such agreement, and in consultation with the DIP Lenders, provide a Utility Company with additional adequate assurance of payment, including, but not limited to, cash deposits, prepayments, or other forms of security if the Debtors believe, that such adequate assurance is reasonable, subject to the terms of any debtor in possession financing and cash collateral orders entered by the Court.

k.   If the Debtors, in consultation with the DIP Lenders, and the Utility Company are not able to reach an alternative resolution within 21 days of receipt of the Additional Assurance Request, the Debtors will request a hearing before the Court at the next regularly scheduled hearing to determine the adequacy of assurances of payment with respect to a particular Utility Company (the "Determination Hearing") pursuant to section 366(c)(3) of the Bankruptcy Code.

l.   Pending resolution of any such Determination Hearing, the Utility Company filing such Additional Assurance Request shall be prohibited from altering, refusing, or discontinuing Utility Services to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

6

## IV. Modifications to the Utility Services List.

13.     To the extent the Debtors identify new or additional Utility Companies or discontinue services from existing Utility Companies, the Debtors seek authority to add or remove parties from the Utility Services List. For any Utility Company that is subsequently added to the Utility Services List, the Debtors will serve such Utility Company with a copy of the Court's order regarding Utility Services, including the Adequate Assurance Procedures. The Debtors request that the terms of such Utility Services order and the Adequate Assurance Procedures apply to any subsequently identified Utility Company.

## Basis for Relief

14.     Uninterrupted Utility Services are essential to the Debtors' ongoing business operations, and hence the overall success of these chapter 11 cases. The Debtors' businesses involve exploring for coal, and even though the mine is idled, the Debtors must maintain the ability to utilize utilities to preserve the value of the assets. The Debtors' operations require electricity and gas for lighting, heating, and air conditioning. In addition to the mining operations, the Debtors operate a corporate office responsible for ensuring the smooth operation of the Debtors' businesses. These offices and mining complexes require electricity, telecommunications, internet, water, and waste management (including sewer and trash) services to operate in each of their respective locations. Should any Utility Company refuse or discontinue service, even for a brief period, the Debtors' business operations would be severely disrupted, and such disruption would jeopardize the Debtors' ability to manage their reorganization efforts. Further, feasible alternative utility providers do not exist for most of the mining complexes, or the Debtors would incur substantial costs in finding alternative providers. Accordingly, it is essential that the Utility Services continue uninterrupted during the chapter 11 cases.

15.     Section 366 of the Bankruptcy Code protects a debtor against the immediate termination or alteration of utility services after the Commencement Date. *See* 11 U.S.C. § 366. Section 366(c) of the Bankruptcy Code requires the debtor to provide "adequate assurance" of payment for postpetition services in a form "satisfactory" to the utility company within thirty days of the petition, or the utility company may alter, refuse, or discontinue service. 11 U.S.C. § 366(c)(2). Section 366(c)(1) of the Bankruptcy Code provides a non-exhaustive list of examples for what constitutes "assurance of payment." 11 U.S.C. § 366(c)(1). Although assurance of payment must be "adequate," it need not constitute an absolute guarantee of the debtors' ability to pay. *See, e.g.*, *In re Great Atl. & Pac. Tea Co.*, 2011 WL 5546954, at *5 (Bankr. S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full"); *In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires . . . 'adequate assurance' of payment. The statute does not require an absolute guarantee of payment." (citation omitted)), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997).

16.     When considering whether a given assurance of payment is "adequate," the Court should examine the totality of the circumstances to make an informed decision as to whether the Utility Company will be subject to an unreasonable risk of nonpayment. *See In re Keydata Corp.*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing *In re Cunha*, 1 B.R. 330 (Bankr. E.D. Va. 1979)); *In re Adelphia Bus. Sols., Inc.*, 280 B.R. 63, 82–83 (Bankr. S.D.N.Y. 2002). In determining the level of adequate assurance, however, "a bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co.*, 117 F.3d at

Case 19-01390-DSC11    Doc 7    Filed 04/02/19    Entered 04/02/19 17:26:04    Desc Main
Document      Page 8 of 33

650 (internal quotations omitted) (citing *In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987)).

17.     Here, the Utility Companies are adequately assured against any risk of nonpayment for future services. The Adequate Assurance Deposit, the Existing Deposits, and the Debtors' ongoing ability to meet obligations as they come due in the ordinary course, provides assurance of the Debtors' payment of their future obligations. Moreover, termination of the Utility Services could result in the Debtors' inability to operate their businesses to the detriment of all stakeholders. *Cf. In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service the debtors "would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it").

18.     Courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under section 366 of the Bankruptcy Code. *See, e.g.*, *In re Circuit City Stores Inc.*, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) (stating that "the plain language of §366 of the Bankruptcy Code allows the court to adopt the Procedures set forth in the Utility Order"). Such procedures are important because, without them, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize." *Id.* Here, notwithstanding a determination that the Debtors' Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Companies believe they have under sections 366(b) and (c)(2) of the Bankruptcy Code are wholly preserved under the Adequate Assurance Procedures. *See id.* at *5–6. The Utility Companies still may choose, in accordance with the Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. *See id.* at *6. The Adequate Assurance Procedures, however, avoid a haphazard and chaotic

9

process whereby each Utility Company could make an extortionate, last-minute demand for adequate assurance that would force the Debtors to pay under the threat of losing critical Utility Services. *See id.* at \*5.

19. Further, the Court possesses the power, under section 105(a) of the Bankruptcy Code, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Proposed Adequate Assurance and Adequate Assurance Procedures are necessary and appropriate to carry out the provisions on the Bankruptcy Code, particularly section 366 thereof. Accordingly, the Court should exercise its powers under sections 366 and 105(a) of the Bankruptcy Code and approve both the Adequate Assurance Procedures and the Proposed Adequate Assurance.

20. The Proposed Adequate Assurance and Adequate Assurance Procedures are reasonable and in accord with the purposes of section 366 of the Bankruptcy Code, and thus the Debtors respectfully request that the Court grant the relief requested herein. This Court and others have granted similar relief to that requested herein. *See, e.g., In re Walter Energy, Inc.*, Case No. 15-02741(TOM) (Bankr. N.D. Ala. Aug. 19, 2015) (finding that the adequate assurance and adequate assurance procedures are reasonable); *In re Bill Heard Ents., Inc.*, Case No. 08-83029 (JAC) (Bankr. N.D. Ala. Sept. 30, 2008) (same); *In re Citation Corp.*, Case No. 07-1153 (TOM) (Bankr. N.D. Ala. Mar. 15, 2007) (same); *In re Armstrong Energy, Inc.*, Case No. 17-47541-659 (KSS) (Bankr. E.D. Mo. Dec. 11, 2017) (same); *In re Peabody Energy Corp.*, Case No. 16-42529399 (BSS) (Bankr. E.D. Mo. Apr. 15, 2016) (same).[2]

---

[2] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

10

## Processing of Checks and Electronic Fund Transfers Should Be Authorized

21.     The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of debtor-in-possession financing and anticipated access to cash collateral. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Utility Services. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## Payments Subject to Budget

22.     Notwithstanding anything to the contrary herein, any payments authorized to be made pursuant to this motion shall be made only to the extent authorized under the cash collateral budget approved by the Court in effect as of the time such payment is to be made.

## The Requirements of Bankruptcy Rule 6003 Are Satisfied

23.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Commencement Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed above, prohibiting Utility Companies from altering or discontinuing services, authorizing the Debtors to deposit the Proposed Adequate Assurance and utilize the Adequate Assurance Procedures, and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases. Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. Uninterrupted Utility Services

11

are essential to the Debtors' ongoing business operations, and hence the overall success of these chapter 11 cases as the Debtors must maintain the ability to run their mining equipment in a near-constant state. Additionally, the Debtors' offices require electricity, telecommunications, internet, water, and waste management (including sewer and trash) services to operate in each of their respective locations. Should any Utility Company refuse or discontinue service, even for a brief period, the Debtors' business operations would be severely disrupted, and such disruption would jeopardize the Debtors' ability to manage their reorganization efforts. For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their businesses in the ordinary course and preserve the ongoing value of the Debtors' operations and maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## **Reservation of Rights**

24.     Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as: (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserved their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made

12

pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

25.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

The Debtors will provide notice of this Motion to: (a) the Office of the Bankruptcy Administrator for the Northern District of Alabama; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the lenders under the Debtors' debtor-in-possession credit agreement and prepetition first-lien credit agreements; (d) all other secured lenders; (e) equipment and real property lessors; (f) the United States Attorney's Office for the Northern District of Alabama; (g) the United States Internal Revenue Service; (h) the Alabama Department of Revenue; (i) the United States Environmental Protection Agency; (j) the Alabama Surface Mining Commission; (k) the Alabama Department of Environmental Management; (l) the office of the attorneys general for the states in which the Debtors operate; (m) the Utility Companies listed in the Utility Services List; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the Interim Order and Final Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Birmingham, Alabama
Dated: __04/02/2019__

/s/Lee R. Benton_____
Lee R. Benton
Samuel C. Stephens
BENTON & CENTENO, LLP
2019 Third Avenue North
Birmingham, Alabama 35203
Telephone: (205) 278.8000
lbenton@bcattys.com
sstephens@bcattys.com

– and –

Mary Elisabeth Naumann (KY Bar # 88328)
(*Pro hac admission pending*)
Chacey R. Malhouitre (KY Bar # 91019)
(*Pro hac admission pending*)
JACKSON KELLY PLLC
175 E. Main Street, Ste. 500
Lexington, KY 40507
Telephone: (859) 255-9500
mnaumann@jacksonkelly.com
chacey.malhouitre@jacksonkelly.com

*Proposed Co-Counsel to the Debtors*

**<u>Exhibit A</u>**

**Interim Order**

4833-9859-2912

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| PINEY WOODS RESOURCES, INC.*, et al.*,[1] | Case No. 19-01390-DSC-11 |
| Debtors. | (Jointly Administered) |

# INTERIM ORDER (I) APPROVING
# THE DEBTORS' PROPOSED ADEQUATE ASSURANCE
# OF PAYMENT FOR FUTURE UTILITY SERVICES, (II) PROHIBITING UTILITY
# COMPANIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES,
# (III) APPROVING THE DEBTORS' PROPOSED PROCEDURES FOR RESOLVING
# ADDITIONAL ASSURANCE REQUESTS, AND (IV) GRANTING RELATED RELIEF

Upon the Motion[2] of the above-captioned Debtors for entry of an interim order (this "Interim Order"), (a) approving the Debtors' Proposed Adequate Assurance of payment for future utility services, (b) prohibiting Utility Companies from altering, refusing, or discontinuing services, (c) approving the Adequate Assurance Procedures for resolving Additional Assurance Requests, (d) scheduling a final hearing to consider approval of the Motion on a final basis, and (e) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *General Order of Reference* from the United States District Court for the Northern District of Alabama, dated January 12, 1995; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent with Article III of the United

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Piney Woods Resources, Inc. (0129) and Jesse Creek Mining, LLC (0533). The location of the Debtors' service address is: 1615 Kent Dairy Road, Alabaster, Alabama 35007. Debtors have filed a motion for joint administration with the Court.

[2] Capitalized terms shall have the same meanings as defined in the Motion unless otherwise defined herein.

1

4833-9859-2912

States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      Subject to the Adequate Assurance Procedures for resolving Additional Assurance Requests, the Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2019, at__:__ _.m., prevailing Central Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Central Time, on _____, 2019, and shall be served on: (a) the Office of the Bankruptcy Administrator for the Northern District of Alabama; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Debtors; (d) counsel to the lenders under the Debtors' debtor-in-possession credit agreement and prepetition first-lien credit agreements; (e) all other secured lenders; (f) equipment and real property lessors; (g) the United States Attorney's Office for the Northern District of Alabama; (h) the United States Internal Revenue Service; (i) the Alabama Department of Revenue; (j) the United States Environmental Protection Agency; (k) the Alabama Surface Mining Commission; (l) the Alabama Department of Environmental Management; (m) the office of the attorneys general for the states in which the Debtors operate; (n) the Utility Companies

4833-9859-2912

listed in the Utility Services List; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002. In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3.     The following Adequate Assurance Procedures are hereby approved on an interim basis:

a.     Subject to paragraphs (e)–(h) herein, the Debtors will deposit the Adequate Assurance Deposit, in the aggregate amount of $15,000.00, in the Adequate Assurance Account within ten business days of entry of the Interim Order.

b.     Each Utility Company (other than those with Existing Deposits) shall be entitled to the funds in the Adequate Assurance Account in the amount set forth for such Utility Company in the column labeled "Proposed Adequate Assurance" on the Utility Services List.

c.     If an amount relating to Utility Services provided postpetition by a Utility Company is unpaid, and remains unpaid beyond any applicable grace period, such Utility Company may request a disbursement from the Adequate Assurance Account by giving notice to: (i) the Debtors, 1615 Kent Dairy Road, Alabaster, AL 35007; (ii) proposed counsel to the Debtors, Jackson Kelly PLLC, 175 E. Main Street, Ste. 500, Lexington, KY 40507, Attn: Mary Elisabeth Naumann and Chacey R. Malhouitre; (iii) proposed co-counsel to the Debtors, Benton & Centeno LLP, 2019 Third Avenue North, Birmingham, Alabama 35203, Attn.: Lee R. Benton and Samuel C. Stephens; (iv) the Office of the Bankruptcy Administrator for the Northern District of Alabama, Robert S. Vance Federal Building, 1800 Fifth Avenue, Suite 300, Birmingham, Alabama 35203; (v) the official committee of unsecured creditors (if any) appointed in these chapter 11 cases and its counsel; (vi) counsel to the lenders under the Debtors' debtor-in-possession credit agreement and prepetition first-lien credit agreements, Davis Graham & Stubbs LLP, 1550 17th Street, Suite 500, Denver, CO 80202, Attn: Christopher L. Richardson, and Kyler K. Burgi, and Maynard Cooper & Gale, 1901 Sixth Avenue North Regions Harbert Plaza, Suite 2400, Birmingham, AL 35203, Jayna Partain Lamar; and (vii) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Debtors shall, in consultation with the DIP Lenders, honor such request within five business days after the date the request is received by the Debtors, subject to the ability of the Debtors, in consultation with the DIP Lenders, and any such requesting Utility Company to resolve any dispute regarding such request without further order of the Court. To the extent a

4833-9859-2912

Utility Company receives a disbursement from the Adequate Assurance Account, the Debtors shall replenish the Adequate Assurance Account in the amount disbursed.

d.    The portion of the Adequate Assurance Deposit attributable to each Utility Company shall be returned to the Debtors on the earlier of (i) reconciliation and payment by the Debtors of the Utility Company's final invoice in accordance with applicable nonbankruptcy law following the Debtors' termination of Utility Services from such Utility Company and (ii) the effective date of any chapter 11 plan confirmed in these chapter 11 cases.

e.    Any Utility Company desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "<u>Additional Assurance Request</u>") on the Notice Parties.

f.    Any Additional Assurance Request must (i) be in writing, (ii) identify the location for which the Utility Services are provided, (iii) summarize the Debtors' payment history relevant to the affected account(s), (iv) certify the amount that is equal to two weeks of the Utility Services the Utility Company provides to the Debtors, calculated based on Debtors' projected use following the idling of the mine or any other minimum amount required, and (v) certify that the Utility Company does not already hold a deposit equal to or greater than two weeks of Utility Services.

g.    Any Additional Assurance Request may be made at any time. If a Utility Company fails to file and serve an Additional Assurance Request, the Utility Company shall be (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with section 366 of the Bankruptcy Code and (ii) forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtors on account of any unpaid prepetition charges, or requiring additional assurance of payment other than the Proposed Adequate Assurance.

h.    Upon the Debtors' receipt of any Additional Assurance Request, the Debtors shall promptly negotiate with such Utility Company to resolve such Utility Company's Additional Assurance Request to negotiate with such Utility Company to resolve such Utility Company's Additional Assurance Request.

i.    The Debtors may, in consultation with the DIP Lenders, and without further order from the Court, resolve any Additional Assurance Request by mutual agreement with a Utility Company and, the Debtors may, in connection with any such agreement, and in consultation with the DIP Lenders, provide a Utility Company with additional adequate assurance of payment, including, but not limited to, cash deposits, prepayments, or other forms of security if the Debtors believe, that such adequate assurance is reasonable, subject to

4833-9859-2912

the terms of any debtor in possession financing and cash collateral orders entered by the Court.

j.    If the Debtors, in consultation with the DIP Lenders, and the Utility Company are not able to reach an alternative resolution within 21 days of receipt of the Additional Assurance Request, the Debtors will request a hearing before the Court at the next regularly scheduled hearing to determine the adequacy of assurances of payment with respect to a particular Utility Company (the "Determination Hearing") pursuant to section 366(c)(3) of the Bankruptcy Code.

k.    Pending resolution of any such Determination Hearing, the Utility Company filing such Additional Assurance Request shall be prohibited from altering, refusing, or discontinuing Utility Services to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

l.    The Adequate Assurance Account shall not be subject to any liens.

4.    The Adequate Assurance Deposit and the Existing Deposits, together with the Debtors' ability to pay for future utility services subject to the Adequate Assurance Procedures, shall constitute adequate assurance of future payment as required by section 366 of the Bankruptcy Code.

5.    The Utility Companies are prohibited from requiring additional adequate assurance of payment other than pursuant to the Adequate Assurance Procedures.

6.    The Debtors are authorized, in consultation with the DIP Lender, following the giving of two weeks' notice to the affected Utility Company, and the Debtors having received no objection from any such Utility Company, to add or remove any Utility Company from the Utility Services List, and the Debtors shall add to or subtract from the Adequate Assurance Deposit an amount equal to one half the Debtors' projected monthly cost of Utility Services calculated following the idling of the mine or the monthly minimum required to maintain the Utility Service, whichever is greater, for each subsequently added or removed Utility Company as soon as practicable. If an objection is received, the Debtors shall request a hearing before this Court at the

4833-9859-2912

next regularly scheduled hearing date, or such other date that the Debtors and the Utility Company may agree. The Debtors shall not deduct from the Adequate Assurance Deposit the amount set aside for any Utility Company that the Debtors seek to terminate or delete from the Utility Service List unless and until the two week notice period has passed and the Debtors have not received any objection to termination or deletion from such Utility Company, or until any such objection has been resolved consensually or by order of the Court. For Utility Companies that are added to the Utility Services List, the Debtors will cause a copy of this Interim Order, including the Adequate Assurance Procedures, to be served on such subsequently added Utility Company. Any Utility Company subsequently added to the Utility Services List shall be bound by the Adequate Assurance Procedures. In addition, the Debtors will provide an Adequate Assurance Deposit in an amount equal to one half the Debtors' projected monthly cost of Utility Services calculated following the idling of the mine or the monthly minimum required to maintain the Utility Service, whichever is greater for any Utility Company added to the Utility Services List as set forth herein.

7. The relief granted herein is for all Utility Companies providing Utility Services to the Debtors and is not limited to those parties or entities listed on the Utility Services List.

8. The Debtors' service of the Motion upon the Utility Services List shall not constitute an admission or concession that each such entity is a "utility" within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights and defenses with respect thereto.

9. Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d)

4833-9859-2912

an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Interim Order or the Motion are valid, and the Debtors expressly reserved their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

10.    The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b)**.**

11.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

12.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

13.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

14.    Notwithstanding anything to the contrary in this Interim Order, any payment made (or to be made) and any authorization contained in this Interim Order shall be subject to the terms, conditions, limitations, and requirements of any interim order authorizing postpetition secured financing and authorizing the Debtors' use of cash collateral (together with any approved budget (including any permitted variances) in connection therewith, the "Interim DIP Order"), and to the extent there is any inconsistency between the terms of the Interim DIP Order and any action taken or proposed to be taken under this Interim Order, the terms of the Interim DIP Order (together with any approved budget (including any permitted variances) in connection therewith) shall control.

4833-9859-2912

15.     All Adequate Assurance Deposits returned to the Debtors in accordance with this Interim Order shall, upon their return to the Debtor, constitute Cash Collateral of the DIP Lender.

16.         This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Dated: _____, 2019          _____
Birmingham, Alabama                  UNITED STATES BANKRUPTCY JUDGE

4833-9859-2912

**<u>Exhibit B</u>**

**Final Order**

4833-9859-2912

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| PINEY WOODS RESOURCES, INC., *et al.*,[1] | Case No. 19-01390-DSC-11 |
| Debtors. | (Jointly Administered) |

# FINAL ORDER (I) APPROVING
# THE DEBTORS' PROPOSED ADEQUATE ASSURANCE OF
# PAYMENT FOR FUTURE UTILITY SERVICES, (II) PROHIBITING UTILITY
# COMPANIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES,
# (III) APPROVING THE DEBTORS' PROPOSED PROCEDURES FOR RESOLVING
# ADDITIONAL ASSURANCE REQUESTS, AND (IV) GRANTING RELATED RELIEF

Upon the Motion[2] of the above-captioned Debtors for entry of a final order (this "Final Order"), (a) approving the Debtors' Proposed Adequate Assurance of payment for future utility services, (b) prohibiting Utility Companies from altering, refusing, or discontinuing services, (c) approving the Adequate Assurance Procedures, and (d) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *General Order of Reference* from the United States District Court for the Northern District of Alabama, dated January 12, 1995; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Piney Woods Resources, Inc. (0129) and Jesse Creek Mining, LLC (0533). The location of the Debtors' service address is: 1615 Kent Dairy Road, Alabaster, Alabama 35007. Debtors have filed a motion for joint administration with the Court.

[2]    Capitalized terms shall have the same meanings as defined in the Motion unless otherwise defined herein.

4833-9859-2912

U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. Subject to the Adequate Assurance Procedures, the Motion is granted on a final basis as set forth herein.

2. The following Adequate Assurance Procedures are hereby approved:

    a. Subject to paragraphs (e)–(h) herein, the Debtors will deposit the Adequate Assurance Deposit, in the aggregate amount of $15,000.00, in the Adequate Assurance Account within ten business days of entry of the Interim Order.

    b. Each Utility Company (other than those with Existing Deposits) shall be entitled to the funds in the Adequate Assurance Account in the amount set forth for such Utility Company in the column labeled "Proposed Adequate Assurance" on the Utility Services List.

    c. If an amount relating to Utility Services provided postpetition by a Utility Company is unpaid, and remains unpaid beyond any applicable grace period, such Utility Company may request a disbursement from the Adequate Assurance Account by giving notice to: (i) the Debtors, 1615 Kent Dairy Road, Alabaster, AL 35007; (ii) proposed counsel to the Debtors, Jackson Kelly PLLC, 175 E. Main Street, Ste. 500, Lexington, KY 40507, Attn: Mary Elisabeth Naumann and Chacey R. Malhouitre; (iii) proposed co-counsel to the Debtors, Benton & Centeno LLP, 2019 Third Avenue North, Birmingham, Alabama 35203, Attn.: Lee R. Benton and Samuel C. Stephens; (iv) the Office of the Bankruptcy Administrator for the Northern District of Alabama, Robert S. Vance Federal Building, 1800 Fifth Avenue, Suite 300, Birmingham, Alabama 35203; (v) the official committee of unsecured creditors (if any) appointed in these chapter 11 cases and its counsel; (vi) counsel to the lenders under the

4833-9859-2912

Debtors' debtor-in-possession credit agreement and prepetition first-lien credit agreements, Davis Graham & Stubbs LLP, 1550 17th Street, Suite 500, Denver, CO 80202, Attn: Christopher L. Richardson, and Kyler K. Burgi, and Maynard Cooper & Gale, 1901 Sixth Avenue North Regions Harbert Plaza, Suite 2400, Birmingham, AL 35203, Jayna Partain Lamar; and (vii) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002 (collectively, the "<u>Notice Parties</u>"). The Debtors shall, in consultation with the DIP Lenders, honor such request within five business days after the date the request is received by the Debtors, subject to the ability of the Debtors, in consultation with the DIP Lenders, and any such requesting Utility Company to resolve any dispute regarding such request without further order of the Court. To the extent a Utility Company receives a disbursement from the Adequate Assurance Account, the Debtors shall replenish the Adequate Assurance Account in the amount disbursed.

d.    The portion of the Adequate Assurance Deposit attributable to each Utility Company shall be returned to the Debtors on the earlier of (i) reconciliation and payment by the Debtors of the Utility Company's final invoice in accordance with applicable nonbankruptcy law following the Debtors' termination of Utility Services from such Utility Company and (ii) the effective date of any chapter 11 plan confirmed in these chapter 11 cases.

e.    Any Utility Company desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "<u>Additional Assurance Request</u>") on the Notice Parties.

f.    Any Additional Assurance Request must (i) be in writing, (ii) identify the location for which the Utility Services are provided, (iii) summarize the Debtors' payment history relevant to the affected account(s), (iv) certify the amount that is equal to two weeks of the Utility Services the Utility Company provides to the Debtors, calculated based on Debtors' projected use following the idling of the mine or any other minimum amount required, and (v) certify that the Utility Company does not already hold a deposit equal to or greater than two weeks of Utility Services.

g.    Any Additional Assurance Request may be made at any time. If a Utility Company fails to file and serve an Additional Assurance Request, the Utility Company shall be (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with section 366 of the Bankruptcy Code and (ii) forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtors on account of any unpaid prepetition charges, or requiring additional assurance of payment other than the Proposed Adequate Assurance.

4833-9859-2912

h. Upon the Debtors' receipt of any Additional Assurance Request, the Debtors shall promptly negotiate with such Utility Company to resolve such Utility Company's Additional Assurance Request to negotiate with such Utility Company to resolve such Utility Company's Additional Assurance Request.

i. The Debtors may, in consultation with the DIP Lenders, and without further order from the Court, resolve any Additional Assurance Request by mutual agreement with a Utility Company and, the Debtors may, in connection with any such agreement, and in consultation with the DIP Lenders, provide a Utility Company with additional adequate assurance of payment, including, but not limited to, cash deposits, prepayments, or other forms of security if the Debtors believe, that such adequate assurance is reasonable, subject to the terms of any debtor in possession financing and cash collateral orders entered by the Court.

j. If the Debtors, in consultation with the DIP Lenders, and the Utility Company are not able to reach an alternative resolution within 21 days of receipt of the Additional Assurance Request, the Debtors will request a hearing before the Court at the next regularly scheduled hearing to determine the adequacy of assurances of payment with respect to a particular Utility Company (the "<u>Determination Hearing</u>") pursuant to section 366(c)(3) of the Bankruptcy Code.

k. Pending resolution of any such Determination Hearing, the Utility Company filing such Additional Assurance Request shall be prohibited from altering, refusing, or discontinuing Utility Services to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

l. The Adequate Assurance Account shall not be subject to any liens.

3. The Adequate Assurance Deposit and the Existing Deposits, together with the Debtors' ability to pay for future utility services subject to the Adequate Assurance Procedures, shall constitute adequate assurance of future payment as required by section 366 of the Bankruptcy Code.

4. The Utility Companies are prohibited from requiring additional adequate assurance of payment other than pursuant to the Adequate Assurance Procedures.

5. The Debtors are authorized, in consultation with the DIP Lender, following the giving of two weeks' notice to the affected Utility Company, and the Debtors having received no objection

4833-9859-2912

from any such Utility Company, to add or remove any Utility Company from the Utility Services List, and the Debtors shall add to or subtract from the Adequate Assurance Deposit an amount equal to one half the Debtors' projected monthly cost of Utility Services calculated following the idling of the mine or the monthly minimum required to maintain the Utility Service, whichever is greater, for each subsequently added or removed Utility Company as soon as practicable. If an objection is received, the Debtors shall request a hearing before this Court at the next regularly scheduled hearing date, or such other date that the Debtors and the Utility Company may agree. The Debtors shall not deduct from the Adequate Assurance Deposit the amount set aside for any Utility Company that the Debtors seek to terminate or delete from the Utility Service List unless and until the two week notice period has passed and the Debtors have not received any objection to termination or deletion from such Utility Company, or until any such objection has been resolved consensually or by order of the Court. For Utility Companies that are added to the Utility Services List, the Debtors will cause a copy of this Final Order, including the Adequate Assurance Procedures, to be served on such subsequently added Utility Company. Any Utility Company subsequently added to the Utility Services List shall be bound by the Adequate Assurance Procedures. In addition, the Debtors will provide an Adequate Assurance Deposit in an amount equal to one half the Debtors' projected monthly cost of Utility Services calculated following the idling of the mine or the monthly minimum required to maintain the Utility Service, whichever is greater, for any Utility Company added to the Utility Services List as set forth herein.

6.     The relief granted herein is for all Utility Companies providing Utility Services to the Debtors and is not limited to those parties or entities listed on the Utility Services List.

7.     The Debtors' service of the Motion upon the Utility Services List shall not constitute an admission or concession that each such entity is a "utility" within the meaning of

4833-9859-2912

section 366 of the Bankruptcy Code, and the Debtors reserve all rights and defenses with respect thereto.

8.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Final Order or the Motion are valid, and the Debtors expressly reserved their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

9.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

10.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

11.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

12.     Notwithstanding anything to the contrary in this Final Order, any payment made (or to be made) and any authorization contained in this Final Order shall be subject to the terms, conditions, limitations, and requirements of any final order authorizing postpetition secured financing and authorizing the Debtors' use of cash collateral (together with any approved budget

4833-9859-2912

(including any permitted variances) in connection therewith, the "<u>Final DIP Order</u>"), and to the extent there is any inconsistency between the terms of the Final DIP Order and any action taken or proposed to be taken under this Final Order, the terms of the Final DIP Order (together with any approved budget (including any permitted variances) in connection therewith) shall control.

13.     All Adequate Assurance Deposits returned to the Debtors in accordance with this Final Order shall, upon their return to the Debtor, constitute cash collateral of the DIP Lender.

14.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Dated: _____, 2019          _____
Birmingham, Alabama                  UNITED STATES BANKRUPTCY JUDGE

4833-9859-2912

**Exhibit C**

**Utility Service List**

4833-9859-2912

## Utility Service List[1]

| Provider | Address | Service(s) Provided | Acct. No. (If Known) | Debtor(s) Served | Proposed Adequate Assurance | Existing Deposit |
|---|---|---|---|---|---|---|
| Alabama Power Company | PO Box 242 Birmingham, AL 35292 | Electric service | | Jesse Creek Mining, LLC | $12,500.00 | Unknown |
| Southern LINC | PO BOX 931581 Atlanta, GA 31193-1581 | Wireless comm | | Jesse Creek Mining, LLC | $    650.00 | Unknown |
| Alabaster Water Board | 213 1st Street North Alabaster, AL 35007 | Water service | | Jesse Creek Mining, LLC | $      50.00 | Unknown |
| Montevallo Water Works and Sewer | 613 Valley Street Montevallo, AL 35115 | Water/sewer service | | Jesse Creek Mining, LLC | $      50.00 | Unknown |
| Advantage Waste | P.O. Box 5526 Birmingham, AL 35207 | Trash & sewer svc | | Jesse Creek Mining, LLC | -- | Unknown |
| Republic Service #802 | P.O. Box 9001099 Louisville, KY 40290-1099 | Trash service | | Jesse Creek Mining, LLC | $    500.00 | Unknown |
| Spire | P.O. Box 2224 Birmingham, AL 35246-0022 | Gas service | | Jesse Creek Mining, LLC | $      50.00 | Unknown |
| AT&T | PO Box 5019 Carol Stream, IL 60197 | Phone/internet | | Jesse Creek Mining, LLC | $    900.00 | Unknown |
| Sprint | PO Box 4181 Carol Stream, IL 60197-4181 | Phone | | Jesse Creek Mining, LLC | $    125.00 | Unknown |
| Vulcan Telecom | 1919 Kelly Lane Leeds, AL 35094 | Phone | | Jesse Creek Mining, LLC | $    175.00 | Unknown |

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

4833-9859-2912